UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PHILLIP R. WASSERMAN,

     Plaintiff,

v.                                 Case No.: 6:25-CV-2498-AGM-RMN

RACHELLE BEDKE, RACHEL JONES,
GABRIEL ACOSTA, STEPHEN HOWLAND,
ADAM ALLEN, LAUREN KOCZINSKY,
SEAN BATSCH, AND KENNETH ROSSMAN,

     Defendants.

_____/

## DEFENDANT GABRIEL ACOSTA'S AMENDED MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW (AMENDED TO INCLUDE CERTIFCATION REGARDING USE OF ARTIFICIAL INTELLIGENCE)

Defendant Gabriel Acosta (hereinafter "Acosta"), by and through the undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby motions this Honorable Court to issue an order dismissing Plaintiff's Amended Complaint (ECF No. 10).

Plaintiff brings this suit following his conviction and sentence in underlying criminal case *United States of America v. Phillip Roy Wasserman*, No. 8:20-cr-20-CEH-NHA (M.D. Fla. Jan. 31, 2024), for which Plaintiff was convicted of numerous counts

of wire fraud and mail fraud, conspiracy to commit wire fraud and mail fraud, and tax evasion and is currently incarcerated. [Exhibit A – Judgment and Sentence].[1]

Plaintiff names as Defendants in this suit the following individuals that Plaintiff alleges were involved in Plaintiff's criminal case: the Florida Office of Financial Regulation and the United States Internal Revenue Service investigators, the United States Attorney's Office prosecutors, Plaintiff's co-defendant, and counsel for Plaintiff's co-defendant. [ECF No. 10 at 2].

Plaintiff brings this suit against Defendants in their individual capacities. [ECF No. 10 at 1].

At all times relevant hereto, Acosta was the manager of the Florida Office of Financial Regulation's Tampa Office. [ECF No. 10 at 2].

Plaintiff claims that Defendants, throughout their various involvement in Plaintiff's criminal case, all conspired against Plaintiff to deprive Plaintiff of his reputation, finances, and liberty. [ECF No. 10 at 3-5].[2]

---

[1] Under the "incorporation by reference" doctrine, a document attached to a motion to dismiss may be considered part of the pleadings if its contents are alleged in the complaint and the document is (1) central to the plaintiff's claim and (2) undisputed. *See Smith v. Rainey*, 747 F. Supp. 2d 1327, n. 14 (M.D. Fla September 30, 2010) (*citing Horsley v. Feldt*, 304 F. 3d 1125, 1134-35 (11th Cir. 2002); *Day v. Taylor*, 400 F. 3d 1272, 1276 (11th Cir. 2005). Here, considering the nature of Plaintiff's claims, Plaintiff's criminal case and the various pleadings/rulings therein are central to Plaintiff's claims. Plaintiff himself attaches numerous pleadings from his criminal case to his Amended Complaint and relies on such in furtherance of his claims in this suit. [ECF No. 10 *in passim*]. Therefore, it is appropriate for this Honorable Court to consider Acosta's exhibit in support of this motion to dismiss without converting such to a motion for summary judgment.

[2] Plaintiff also brings claims of defamation and libel but only against the Assistant United States Attorneys – Bedke and Jones.

Acosta hereby moves this Honorable Court to dismiss Plaintiff's Complaint based upon the following:

A. Plaintiff is collaterally estopped from bringing his claims,

B. The *Heck* doctrine bars Plaintiff's claims,

C. Plaintiff fails to state a claim, and

D. Qualified immunity shields Acosta from Plaintiff's claims.

## I.      Plaintiff's Allegations.

As indicated above, Plaintiff claims that Defendants – including Acosta – conspired against Plaintiff throughout their various involvement in Plaintiff's criminal case. [ECF No. 10 at 3-5].

In Count 2, Plaintiff claims that Defendants conspired to cover up Plaintiff's co-defendant's mental illness. [ECF No. 10 at 3-4].

In Count 3, Plaintiff claims that Defendants conspired to cover up the United States Federal Bureau of Investigation's (hereinafter "FBI") refusal to engage in Plaintiff's case. [ECF No. 10 at 4-5].

In Count 4, Plaintiff claims that Defendants, in violation of the Racketeer Influenced and Corrupt Organization Act (hereinafter "RICO"), committed various state and federal offenses throughout their conspiring against Plaintiff. [ECF No. 10 at 5].

Plaintiff claims that Defendants acted with the intent to deprive Plaintiff of his reputation, finances, and liberty. [ECF No. 10 at 3-5].

Plaintiff seeks a minimum of $500,000,000.00 (five hundred million dollars) in compensatory and punitive damages. [ECF No. 10 at 5].

**MEMORANDUM OF LAW**

## II.   Standard of Review.

"On a motion to dismiss, the facts stated in [a] complaint and all reasonable inferences therefrom are taken as true." *Stephens v. Dep't of Health & Human Servs.*, 901 F. 2d 1571, 1573 (11th Cir. 1990) (internal citations omitted). "[T]he facts and inferences therefrom are viewed in a light most favorable to the [plaintiff]." *Id.* (internal citations omitted).

"To survive dismissal, 'the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff's complaint should be dismissed.'" *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F. 3d 1270, 1274 (11th Cir. 2008) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). It is not enough that a claim is conceivable, the applicable standard is that a claim must be plausible and a complaint is subject to dismissal when the facts pleaded do not meet this standard. *See Bell Atl. Corp.*, 550 U.S. at 547 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.")

Furthermore, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). However, "[t]he tenet

that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 663. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgt., Ltd. v. Jaharis*, 297 F. 3d 1182, 1188 (11th Cir. 2002) (internal citations omitted).

Lastly, while pro se litigants are entitled to the benefit of having their pleadings liberally construed, a court cannot "act as de facto counsel for a party" or "rewrite an otherwise deficient pleading in order to sustain an action." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F. 3d 1359, 1369 (11th Cir. 1998) (internal citations omitted) (overruled on separate grounds). Such would only result in a waste of judicial resources, litigants suffering, and society losing confidence in the judicial system. *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F. 3d 802, fn.4 (11th Cir. 2010) (citing *Johnson Enters of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F. 3d 1290, 1333 (11th Cir. 1998) and *Ebrahimi v. City of Huntsville Bd. Of Educ.*, 114 F. 3d 162, 165 (11th Cir. 1997)).

### III.   Argument.

### A. Plaintiff is collaterally estopped from bringing his claims.

"Collateral estoppel, or, in modern usage, issue preclusion, 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment,

that issue cannot again be litigated between the same partied in any future lawsuit.'" *Dalgado v. Florida Department of Corrections*, 659 F. 3d 1311, n. 17 (11th Cir. 2011).

Here, Plaintiff is collaterally estopped from brining his claims in this case considering the claims that Plaintiff raised and that were disposed of in (1) Plaintiff's underlying criminal case *United States of America v. Phillip Roy Wasserman*, No. 8:20-cr-20-CEH-NHA (M.D. Fla. Jan. 31, 2024) and (2) Plaintiff's prior civil suit *Phillip R. Wasserman v. United States of America, State of Florida Office of Financial Regulation, and Stephen Howland*, 8:21-cv-2334-TPB-SPF (M.D. Fla September 10, 2025).

In Plaintiff's criminal case, he raised the matter of Defendants allegedly withholding evidence pertaining to the mental health of Plaintiff's co-defendant and also the FBI's alleged refusal to join the case. [ECF No. 10 at Exhibit 1 – Exhibit 7]. The court in Plaintiff's criminal case considered Plaintiff's claims and denied them. [Exhibit B – Order].

In Plaintiff's prior civil suit, he raised the matter of Florida's Office of Financial Regulations and the United States Internal Revenue Service allegedly conspiring against Plaintiff in relation to their involvement in Plaintiff's criminal case. [Exhibit C – Complaint]. The court in that case dismissed Plaintiff's claims at the summary judgement stages. [Exhibit D – Order on Cross-Motions for Summary Judgment; Exhibit E – Judgment].

Thus, the issues that Plaintiff currently raises before this Honorable Court have already been raised between the same parties and disposed of. Accordingly, Plaintiff

is collaterally estopped from raising said claims in this suit and Plaintiff's Amended Complaint should be dismissed.

**B.  The *Heck* doctrine bars Plaintiff's claims.**

The *Heck* doctrine bars civil claims when they challenge the validity of criminal convictions. *See Heck v. Humphrey*, 512 U.S. 477, 486-76 (1994); *Abusaid v. Hillsborough County Board of County Commissioners*, 637 F. Supp. 2d 1002, 1018-20 (M.D. Fla. 2007); *Alsobrook v. Alvarado*, 986 F. Supp. 2d 1312, 1319-20 (S.D. Fla. 2013). For *Heck* to apply, the success of the civil claim must "necessarily undermine" the criminal conviction. *See Vickers v. Donahue*, 137 F. App'x 285, 289-90 (11th Cir. 2005); *Dyer v. Lee*, 488 F. 3d 876, 884 (11th Cir. 2007); *Dixon v. Hodges*, 887 F. 3d 1235, 1239 (11th Cir. 2018).

Whether a civil claim "necessarily undermines" a criminal conviction is a fact-specific question. *Tillman v. Orange County, Fla.*, 519 Fed. Appx. 632, 635-36 (11th Cir. 2013). "It is irrelevant that [the plaintiff] disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit." *Okoro v. Callaghan*, 324 F. 3d 488, 490 (7th Cir. 2003). A plaintiff  may "voluntarily steered [thier case] into *Heck* territory by making specific factual allegations in the complaint . . . inconsistent with the facts on which his criminal conviction was based." *Hayward v. Kile*, 2009 WL 2045923, at *1 (S.D. Ga. July 13, 2009).

Before a plaintiff may a civil claim that "necessarily undermines" a criminal conviction, he or she "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-76 (1994).

Here, the only interpretation of the facts is that favorable rulings for Plaintiff in this suit would necessarily undermine the validity of Plaintiff's criminal convictions. Plaintiff does not shy away from intertwining his claims in this suit with the validity of his criminal conviction and even goes as far as attaching various motions the he filed in his criminal case challenging the validity of his conviction to his Amended Complaint citing such in support of his claims in this suit. [ECF No. 10 at Exhibit 1 – Exhibit 7].

In particular, Plaintiff make two specific allegations, both in a conclusory manner, that are essential to the success of his civil claims that undermine the validity of his criminal conviction, thus directly triggering *Heck*. First, Plaintiff claims that Defendants – including Acosta – acted without jurisdiction with respect to their various involvement in Plaintiff's criminal case [ECF No. 10 at 4]. Second, Plaintiff claims that Defendants – including Acosta – unlawfully withheld evidence in Plaintiff's criminal case. [ECF No. 10 at 3-5]. If this Honorable Court were to rule that Defendants – including Acosta – acted without jurisdiction in regard to Plaintiff's criminal case or unlawfully withheld evidence in Plaintiff's criminal case (which this Court would have to rule in order for Plaintiff to succeed on the merits of his claims),

Page 8 of 17

such would undoubtedly impact the validity of Plaintiff's criminal conviction. Thus, the *Heck* doctrine bars Plaintiff's claims and Plaintiff's Amended Complaint should be dismissed accordingly.

## C. Plaintiff fails to state a claim.

To avoid dismissal for failing to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief [...]" *See Bell Atlantic Corp.*, 550 U.S. at 555 (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "'[T]he complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff's complaint should be dismissed.'" *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F. 3d 1270, 1274 (11th Cir. 2008) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). The plausibility standard required for complaints is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *See Ashcroft*, 556 U.S. at 678. Therefore, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. Rule Civ. Proc. 8(a)(2)).

To state a claim of conspiracy, a plaintiff must prove "that the parties 'reached an understanding' to deny the plaintiff his or her rights." *See Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990) (citing *Addickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). A plaintiff may not merely string together allegations to adequately plead

Page 9 of 17

conspiracy. *See Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992). Rather, to satisfy the "understanding" element, the plaintiff must offer evidence of an agreement between the defendants. *See Bailey v. Board of County Com'rs of Alachua County, Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992) (holding that plaintiff failed to establish conspiracy theory because defendants' lack of communication precludes their agreement).

Here, Plaintiff fails to alleged that Acosta did anything in relation to Plaintiff let alone that Acosta reached some form of understanding with the other named Defendants in this case to deprive Plaintiff of his rights. The only time Plaintiff names Acosta is when Plaintiff lists the Defendants. [ECF No. 10 at 2]. Acosta is not mentioned in any of Plaintiff's counts. [ECF No. 10 at 3-5]. It would appear that Plaintiff relies solely on Acosta's status as manager of the Florida Officer of Financial Regulation's Tampa Division during the time in question as Plaintiff's sole support for Plaintiff's claims that Acosta conspired against him. However, as is indicated above, such is insufficient to support a claim of conspiracy.

"The elements of a civil RICO claim are: '(1) a violation of [18 U.S.C.] section 1962; (2) injury to business or property; and (3) that the violation caused the injury.'" *Portionpac Chem. Corp. v. Sanitech Sys., Inc.*, 217 F. Supp. 2d 1238, 1254 (M.D. Fla. 2002) (*quoting Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir.1991). 18 U.S.C. section 1962 states in relevant part:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such

income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. Sec. 1962(a).

Here, just as above, Plaintiff fails to alleged that Acosta did anything in relation to Plaintiff let alone that Acosta engaged in racketeering activity or that such caused injury to Plaintiff's business or property. Again, Acosta's status as manager of the Florida Officer of Financial Regulation's Tampa Division during the time in question alone is insufficient to support Plaintiff's claims that Acosta violated the RICO Act.

The elements of conspiracy claims and RICO claims entirely aside, Plaintiff's Amended Complaint should still be dismissed as an impermissible shotgun pleading.

"There are four basic types of shotgun pleadings: (1) those in which each count adopts the allegations of all preceding counts; (2) those that do not re-allege all preceding counts but are replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) those that do not separate each cause of action or claim for relief into different counts; and (4) those that assert multiple claims against multiple defendants without specifying which applies to which." K*reiter v. Ocwen Loan Servicing, LLC.*, No. 22-80101-CIV, 2022 WL 225884, at *1 (S.D. Fla. Jan. 26, 2022) *(citing Weiland*, 792 F.3d at 1321–23 and *Strategic Income Fund, LLC. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). "The unifying characteristic of all types of shotgun pleadings is that they fail to ... give the defendants adequate notice of the claims against them and the grounds upon which

each claim rests." *Kreiter v. Ocwen Loan Servicing, LLC.*, No. 22-80101-CIV, 2022 WL 225884, at *1 (S.D. Fla. Jan. 26, 2022) (citing Weiland at 1323.)

Here, Plaintiff's Amended Complaint arguably qualified as all four types of shotgun pleadings. Plaintiff's Amended Complaint is composed of nothing more than vague boilerplate legalese accompanied by threadbare and repetitious recitals that "Defendants conspired against me!" Such is insufficient to support any sort of claim factually or legally.

Even if Plaintiff were to materially alleged that Defendants somehow worked in concert to do something unlawful, Plaintiff's claims lack any form of causation. In Count 2, Plaintiff claims that Defendants – including Acosta – conspired to cover up Plaintiff's co-defendant's mental illness; however, Plaintiff fails to allege how such resulted in any deprivation of Plaintiff's rights. The same logic applies to Count 3 with respect to Plaintiff's allegations that Defendants covered up the FBI declining to become involved in Plaintiff's case. Plaintiff fails to allege how such resulted in a deprivations of Plaintiffs rights.

Considering the above, Plaintiff fails to state a conspiracy claim or a RICO claim against Acosta and Plaintiff Amended Complaint should be dismissed accordingly.

### D. Qualified immunity shields Acosta from Plaintiff's claims.

Qualified immunity shields government officials performing discretionary functions from civil liability as long as their conduct violates no "clearly established

statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).

Determining whether an action is barred by qualified immunity is a two-part test. *Zeigler v. Jackson*, 716 F. 2d 847, 849 (11th Cir. 1983). First, the government official must demonstrate their actions were within the scope of discretionary authority by showing "objective circumstances which would compel the conclusion that [their] actions were undertaken pursuant to the performance of [their] duties and within the scope of [their] authority." *Rich v. Dollar*, 841 F. 2d 1558, 1564 (11th Cir. 1988) (citing *Barker v. Norman*, 651 F. 2d 1107, 1121 (5th Cir. 1981). Second, after the governmental official has demonstrated the above, the plaintiff must show a lack of good faith on part of the government official by demonstrating that the official's actions violated a clearly established constitutional right. *Zeigler*, 716 F. 2d at 849.

Essentially, plaintiffs must "show that, when the defendant acted, the law established the contours of a right so clearly that a reasonable official would have understood [their] acts were unlawful." *Post v. City of Fort Lauderdale,* 7 F. 3d 1552, 1557 (11th Cir. 1993). Pursuant to *Zeigler* and its progeny, "[a] right is clearly established if (1) a case with facts materially similar has been decided by the United States Supreme Court, the Eleventh Circuit, or the applicable state supreme court before the challenged conduct; (2) a broader, clearly established principle controls the facts of the situation; or (3) the conduct so obviously violates the constitution that prior case law is unnecessary." *Wade v. Daniels*, 36 F. 4th 1318, 1323 (11th Cir. 2022) (citing *Gaines v. Wardynski*, 871 F. 3d 1203, 1208 (11th Cir. 2017)); *see also Cantu v.*

Page 13 of 17

*City of Dothan, Alabama*, 974 F. 3d 1217, 1232 (11th Cir. 2020) ("A close factual fit between the pre-existing case and the present one is essential.").

Qualified immunity allows government officials breathing room "to carry out their discretionary duties without the fear of personal liability or harassing litigation [...]" *Lee v. Ferraro*, 284 F. 3d 1188, 1194 (11th Cir. 2002). "[O]nly in exceptional cases will government actors have no shield against claims made against them in their individual capacities." *Redd v. City of Enterprise*, 140 F. 3d 1378, 1382 (11th Cir. 2004); *see also Malley v. Briggs*, 475 U.S. 335, 341-43 (1986) (finding that qualified immunity "gives ample room for mistaken judgment" and "provide protection to all but the plainly incompetent or those who knowingly violate the law").

Here, as is indicated above, Plaintiff entirely fails to claim how Acosta was involved in any way with Plaintiff's alleged conspiracies. In doing so, Plaintiff fails to claim that Acosta acted outside the scope of his employment or in poor faith. Accordingly, qualified immunity shields Acosta from Plaintiff's claims and Plaintiff's Amended Complaint should be dismissed.

**WHEREFORE**, based upon the foregoing arguments, Acosta respectfully requests this Honorable Court dismiss Plaintiff's Amended Complaint.

Respectfully submitted,

JAMES UTHMEIER
ATTORNEY GENERAL

/s/Lydon William Schultz
Lydon William Schultz
Assistant Attorney General

Florida Bar No. 126615
Office of the Attorney General
Civil Litigation Central
3507 E. Frontage Road, Suite 200
Tampa, Florida 33607
Tel: (813) 233-2880|Fax: (813) 281-1859
Lydon.Schultz@myfloridalegal.com

**CERTIFICATION UNDER PENALTY OF PERJURY THAT ARTIFICIAL INTELLIGENCE WAS NOT USED IN THE PREPARATION OF FILING DOC. 26 DEFENDANT GABRIEL ACOSTA'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

I have reviewed the Standing Order Requiring Disclosure of the Use of Artificial Intelligence. (Doc. 18). After diligent inquiry and under penalty of perjury, I certify that artificial intelligence was not utilized in the preparation of filing Defendant Gabriel Acosta's Motion to Dismiss Plaintiff's Amended Complaint and Incorporated Memorandum of Law [Doc. 26] in any way. I understand that, whether I represent myself or I am an attorney representing a client, I have an affirmative obligation to read each case cited in this filing. If I fail to do so and a case upon which I rely does not exist or does not reasonably stand for the cited proposition, I understand that the Court may treat this as a violation of Rule 11 of the Federal Rules of Civil Procedure. I have reviewed Rule 11 of the Federal Rules of Civil Procedure and I understand that this rule applies equally to counsel and unrepresented parties, and I am familiar with the sanctions available for violations of Rule 11. If this certification is made by counsel, I further understand that citation to a case that either does not exist or does not reasonably stand for the cited proposition may be treated as a violation of my oath of

candor toward the tribunal and a basis on which my admission to practice in the Middle District of Florida could be revoked or suspended. Further, whether I represent myself or I am an attorney representing a client, I understand that by making this certification under penalty of perjury I could be referred for criminal prosecution if the statements I make here are false.

/s/Lydon William Schultz
Lydon William Schultz
Assistant Attorney General

**Local Rule 3.01(g) Certification**

Pursuant to Local Rule 3.01(g), the undersigned counsel certifies that he  that he has been unable to confer with Plaintiff due to Plaintiff being in federal custody; however, considering the nature of the relief sought therein, the undersigned proceeds with the understanding the Plaintiff objects.

/s/Lydon William Schultz
Lydon William Schultz
Assistant Attorney General

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 9  2026, I electronically caused the foregoing document to be filed with the Clerk of Court by using the CM/ECF system which will serve a copy of the foregoing document to be served to those parties capable of receiving notice of electronic service. I further certify that I caused to be mailed by First-Class U.S. Mail a copy of the foregoing document to Plaintiff, *Pro se,* Phillip Roy Wasserman #73653-018; FCC Coleman Camp, P.O. Box 1027, Coleman FL 33521.

/s/Lydon William Schultz
Lydon William Schultz
Assistant Attorney General